IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VINCENT DOUGLAS,
    *Petitioner*,

v.

NIKITA BAKER, *et al.*,
    *Respondent*

Case No. 25-cv-2243-ABA

**MEMORANDUM OPINION AND ORDER**

Petitioner Vincent Douglas has filed a petition for a writ of habeas corpus, contending he is entitled to release from immigration detention. Although the government has notified him that it intends to remove him to the United Kingdom, he contends (1) there is no significant likelihood that he will be removed to the U.K. in the reasonably foreseeable future and (2) the government's failure to comply with procedural requirements for revoking immigration-related supervised release entitle him to return to supervised release status. For the following reasons, the Court denies without prejudice Petitioner's request for a release order but retains jurisdiction, and orders that ICE conduct an informal interview as required by the applicable regulations, and sets other deadlines on his *Zadvydas* claim, including an evidentiary hearing, as set forth below.

**BACKGROUND**

Mr. Douglas is a 67-year-old native and citizen of Jamaica. ECF No. 1 ¶ 9; ECF No. 9 at 21. He entered the United States on or about March 30, 1995, and was granted parole to work for Homeland Security Investigations. ECF No. 1 ¶ 15. He has lived in the United States for the past three decades. *Id*. And on February 11, 2016, an immigration

1

judge granted an application that Mr. Douglas had filed seeking withholding of removal under the Convention Against Torture, 8 C.F.R. § 1208.16(c)(4). *Id.* ¶ 16. The Department of Homeland Security then released Mr. Douglas from custody subject to an Order of Supervision. *Id.* ¶ 16; *id.* at 14. He was required to periodically report, and there appears to be no dispute that Mr. Douglas complied with all reporting requirements, reporting a total of nine times, including in March 2025 when he was placed on GPS monitoring and directed to next report on July 9, 2025. *Id.* ¶ 18.

Mr. Douglas appeared for the appointment on July 9 as required but was re-detained by ICE. *Id.* ¶ 17. At that time, ICE served two documents on Mr. Douglas. The first was a Notice of Revocation of Release:

> **Notice of Revocation of Release**
>
> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On 2/11/2016, you were ordered removed by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. **Your case is under current review by United Kingdom for the issuance of a travel document.**
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be offered an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive

2

> notification of a new review, which will occur within approximately three months of the date of this notice.
>
> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. Section 1253(a).

ECF No. 8-2 at 1 (emphasis added). ICE was representing that those facts were true as of 1:00 p.m. that day, as reflected in a "Proof of Service" form that accompanied that Notice of Revocation of Release (ECF No. 8-2 at 2):

**PROOF OF SERVICE**

**(1) Personal Service**

(a) I __King, J__ __DO__,
   Name of ICE Officer               Title
certify that I served __DOUGLAS, Vincent__ with a copy of
                        Name of detainee
this document at __Baltimore, MD__ on __7/9/2025__ at __1300__.
                   Institution                Date            Time

Detainee Signature: _Vincent Douglas_     Date: __7/8/2025__

The second document that was served on Mr. Douglas upon his re-detention was a "Notice of Removal" that stated as follows and also included a certificate of service:

3

## NOTICE OF REMOVAL

This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to __United Kingdom__.

---

### CERTIFICATE OF SERVICE

I certify that, on today's date, the contents of this notice were read to __DOUGLAS, Vincent__ in the __English__ language, and I served the alien a copy of this notice in person.

X __Vincent Douglas__
Signature of Alien

__D.O. King__
Title and Signature of ICE Official

__07/09/2025__
Date of Service

__1535__
Time of Service

____
Name or Number of Interpreter (if applicable)

---

ECF No. 8-3.

Thus, as of July 9, 2025, the government contended that it "intend[ed]" to remove Mr. Douglas to the United Kingdom, and that as of 1:00 p.m. ET on that day, Mr. Douglas's "case [wa]s under current review by United Kingdom for the issuance of a travel document."

Shortly after his detention, Mr. Douglas filed in this Court a petition for a writ of habeas corpus. ECF No. 1. As far as the record of this case reflects, Mr. Douglas remains in ICE custody, and no party has brought to the Court's attention any further development regarding the government's purported intent to remove him to the United Kingdom or the United Kingdom's purported willingness to accept him.

**DISCUSSION**

Mr. Douglas contends that the government is not authorized to keep him in immigration detention because (1) his detention amounts to indefinite detention within the meaning of *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), because there is no significant likelihood that he will be removed to the United Kingdom in the reasonably foreseeable future and (2) the government has failed to comply with its own regulations for revoking supervised release. The Court addresses these two claims in turn.[1]

**I.    Jurisdiction**

As a threshold matter, this Court has jurisdiction to adjudicate Mr. Douglas's habeas petition insofar as he seeks an order that he be released from immigration detention. The government does not dispute this, arguing only that this Court lacks jurisdiction "[t]o the extent Petitioner seeks an order staying ICE's effectuation of Petitioner's removal order." ECF No. 8-1 at 22.[2] Mr. Douglas does not seek such an order. But the Court also has independently confirmed that it has subject matter jurisdiction.

In *Zadvydas*, the Supreme Court expressly held that, notwithstanding 8 U.S.C. § 1252(g), "§ 2241 habeas corpus proceedings remain available as a forum for statutory

---

[1] Mr. Douglas also argues that 8 U.S.C. § 1231(a)(6) "does not permit re-detention of previously released noncitizens." ECF No. 9 at 7. Petitioner argues that § 1231(a)(3) and (a)(6) only authorize "continued detention" and that because "the government exercised its discretion to release him from their custody in 2016," there is "no authority for re-detention to be found in that statutory text." The Court disagrees. Section 1231(a)(6) authorizes detention "beyond the removal period." There is no dispute that Mr. Douglas is "beyond" the 90-day "removal period" referenced in § 1231(a)(1)(A).

[2] For citations to ECF filings, page numbers refer to the number appearing in the CM/ECF header for this and other filings referenced herein, which may not align with a document's original page numbering.

and constitutional challenges to post-removal-period detention." 533 U.S. at 688; *see also Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) (holding that "§ 1252(g) . . . is inapplicable to final deportation orders"). And although the REAL ID Act, which became effective on May 11, 2005, included several amendments to § 1252, *see* Real ID Act, Pub. L. No. 109-13, §§ 101(e), 101(f), 106, 119 Stat. 231, 302-323 (May 11, 2005), it did not materially amend § 1252(g). The language the *Zadvydas* Court held rendered § 1252(g) inapplicable to post-removal detention challenges, limiting § 1252(g) to a "cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," was unaffected by the 2005 amendments. Mr. Douglas does not seek an order staying his removal, and thus this case does not implicate the jurisdictional bar in 8 U.S.C. § 1252(g).

**II.   The *D.V.D.* case**

The government argues the Court should dismiss or stay this case pending the resolution of the case *D.V.D. v. U.S. Department of Homeland Security*, Case No. 25-cv-10676-BEM (D. Mass). ECF No. 8-1 at 9–13. The *D.V.D.* litigation does not address, for example, whether or when a person may be detained while the government attempts to effectuate a third-country removal. Because Mr. Douglas challenges his continued *detention,* which is not addressed in *D.V.D.*, a stay or dismissal of the entire case based on *D.V.D.* would be inappropriate.

**III.   Mr. Douglas's *Zadvydas* claim**

Mr. Douglas argues that his continued detention is not authorized under 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas* because there is no significant likelihood that he will be removed to the U.K. in the reasonably foreseeable future. ECF No. 1 ¶¶ 22–26; ECF No. 9 at 14–19. He argues that removal to the U.K. is unlikely both

because the U.K. is unlikely to authorize the U.S. to send him there and because the U.K. is unlikely to commit to not repatriating him to Jamaica. *Id.* at 17–18.

This Court has recently explained several aspects of the requirements of § 1231 and *Zadvydas*. *Cruz Medina v. Noem*, -- F. Supp. 3d. ---, Case No. 25-CV-1768-ABA, 2025 WL 2306274, at *11 (D. Md. Aug. 11, 2025). This included that, when a person is detained based on an intent to effectuate a third-country removal, detention is authorized only if there is a "significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; both during the six-month "removal period" or after, a district court has an "obligation to determine whether detention remains authorized," *Cruz Medina*, 2025 WL 2306274, at *3; and, although there is a "presumption" that, within six months of a removal order becoming final and/or within the first six months a person is detained, detention is "reasonable," even if the presumption applies, it "can be rebutted upon a showing that removal is *not* reasonably foreseeable," *id.* at *7 n.5.

So, the question here, as in *Cruz Medina*, is this: based on the current evidentiary record, is there a "significant likelihood" that Mr. Douglas will be removed to the U.K. "in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701?

The Court concludes, as in *Cruz Medina*, that Petitioner has offered a satisfactory "good reason to believe," *id.*, that the government is unlikely to effectuate his removal to the U.K. in the reasonably foreseeable future. But the Court also concludes that the government has "respond[ed] with evidence sufficient to rebut that showing," *id.*, specifically the two forms described above. To be sure, as in *Cruz Medina*, the record leaves more questions than answers, including: how did ICE decide to put the U.K. on the forms? How likely is the U.K. to actually issue the necessary authorizations to travel

and remain there? How long will this process take—weeks, months, longer? What steps did the government take before revoking Petitioner's release to effectuate his removal to the U.K.? What steps has it taken since then? These open questions leave substantial uncertainty regarding whether there is a "significant likelihood" that Mr. Douglas will be removed to the U.K. in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

But those questions arise in the context of immigration, in which, as a matter of separation of powers, the courts grant substantial deference to "Executive and Legislative Branch decisionmaking." *Id.* at 695. These questions also arise in a context where Congress *mandated* detention during the 90-day removal period, 8 U.S.C. § 1231(a)(2)(A), and authorized detention after a final order of removal, *id.* § 1231(a)(6), at least where removal is reasonably foreseeable, *Zadvydas*, 533 U.S. at 699. That detention "power is subject to important constitutional limitations," *id.* at 695, but the existence of that deference to the executive branch and Congress's intent as reflected in § 1231 are factors that courts must consider in deciding whether a *Zadvydas* petitioner has proven an entitlement to relief pursuant to 28 U.S.C. § 2241.

Here, at least on the current record, even assuming (without deciding) that Mr. Douglas's *Zadvydas* period (during which detention is presumptively reasonable) expired in 2016, the record does not presently establish that his removal to the U.K. is not reasonably foreseeable. The government has represented that Mr. Douglas's "case is under current review by United Kingdom for the issuance of a travel document," and that that "review" began sometime before 1:00 p.m. on July 9. ECF No. 8-2 at 1, 2. At least at this time, the Court accepts the proposition that there is a diplomatic effort underway to effectuate Mr. Douglas's removal to a country other than Jamaica, and specifically to the U.K., and concludes that that evidence is sufficient to rebut

8

Petitioner's showing. And because Mr. Douglas would only have a higher burden if he currently were within his *Zadvydas* period (*i.e.*, if the *Zadvydas* six-month clock started upon his detention in June of this year), the petition would fail, at this time, under that standard too.

That ends the *Zadvydas* analysis—but only for now. The *Zadvydas* analysis is inherently dynamic, on multiple dimensions, as reflected in the open questions identified above. Accordingly, and to discharge its obligations under *Zadvydas*, the Court will require the government to produce to Petitioner any and all documents and information related to any efforts taken to effectuate Petitioner's removal (including what steps had been taken prior to the July 9 Notice of Revocation of Release), and will set an evidentiary hearing to make an updated determination of whether Petitioner is entitled to relief under *Zadvydas*. The Supreme Court "recognize[d] . . . that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Zadvydas*, 533 U.S. at 700. But as the Supreme Court also instructed, "courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention." *Id.*

The Court need not and will not speculate on what would need to change to render a potential future evidentiary record sufficient to entitle Mr. Douglas to habeas relief. At least in some circumstances, the mere passage of time may suffice, as reflected in *Zadvydas* itself, 533 U.S. at 699, as well as in *Clark v. Martinez*, 543 U.S. 371, 386–87 (2005). New information regarding the status of removal efforts or immigration

9

proceedings may also bear on the analysis, or the converse, *i.e.*, if the government "br[ings] forward nothing to indicate that a substantial likelihood of removal subsists," *Clark*, 543 U.S. at 386. The Court will retain jurisdiction and, on the schedule set forth below, the parties shall file supplemental submissions, the government shall produce all information pertinent to the *Zadvydas* analysis, and the parties shall appear for an evidentiary hearing.

## IV.   Release revocation procedures

Mr. Douglas also argues that, even if 8 U.S.C. § 1231(a)(6) permits re-detention of previously released noncitizens in some circumstances and even if he is not entitled to release under *Zadvydas* at this time, he should be released because the government "did not comply with its own regulatory procedural requirements," in various ways:

- He has not been granted an "informal interview" as required by 8 C.F.R. § 241.13(i)(3);
- The Notice of Revocation of Release does not contend that "[t]he purposes of the release have been served" or articulate why it was "appropriate to enforce a removal order," which he contends is required by 8 C.F.R. § 241.4(l)(2);
- Insofar as the government is relying on 8 C.F.R. §§ 241.13(h)(4) and/or (i)(2) as a basis to revoke supervised release,[3] the government has not articulated any "changed circumstances"; and

---

[3] Section 241.13(i)(2) constitutes the regulatory implementation of the Supreme Court's holding in *Zadvydas*, and provides, "The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal."

10

- The Notice of Revocation was not served on counsel (just Mr. Douglas personally) and was not signed by a person authorized to revoke release.

ECF No. 9 at 10–13. These procedural violations, Petitioner contends, render his re-detention "invalid under the Accardi doctrine [referring to *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)]" and "constitute a violation of Petitioner's due process rights." *Id.* at 10.

This Court held in *Cruz Medina* that 8 C.F.R. § 241.4(l)(2)(iii) applies where, as here, a person was previously ordered removed, even if that person has been granted withholding of removal and that, although under § 241.4(l)(2) the Executive Associate Commissioner or a District Director must personally *decide* whether and when to revoke release, the regulation does not prohibit a District Director from delegating *signatory* authority or require a District Director to include in a revocation order the findings set forth in § 241.4(l)(2). *Cruz Medina*, 2025 WL 2306274, at *11.

Another judge of this court recently held that certain violations of 8 C.F.R. § 241.4(l) entitled the petitioner in that case to release under *Accardi*. *Santamaria Orellana v. Baker*, Case No. CV 25-1788-TDC, 2025 WL 2444087, at *6–7 (D. Md. Aug. 25, 2025). There is no question that ICE must comply with the law, including the law on revocation of supervised release, and that includes the requirements set forth in § 241.4(l). And such violations may very well, in some circumstances, rise to the level of a due process violation, as in *Santamaria Orellana*. In that case, "there [wa]s absolutely no record of the decision to revoke Santamaria Orellana's release, much less one that was presented to him . . . ." 2025 WL 2444087 at *8.

In this case, however, the Court concludes that Mr. Douglas has not shown that the alleged violations of § 241.4(l) or § 241.13, if they did constitute violations of those

11

regulations, not only rise to the level of a due process violation but would independently entitle Mr. Douglas to a grant of habeas relief in the form of release from detention. The Court understands the government to have revoked Mr. Douglas's supervised release because it determined that "[i]t is appropriate to enforce a removal order" within the meaning of 8 C.F.R. § 241.4(l)(2)(iii). And with respect to the authority of the officer who signed the notice revoking Mr. Douglas's release, as this Court explained in *Cruz Medina*, the record adequately establishes that signatory authority was delegated to the officer who signed the order revoking Mr. Douglas's release.

But there remains the government's failure to conduct the informal interview required by 8 C.F.R. § 241.13(i)(3), which provides as follows:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

The government concedes that "[w]hen ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an 'informal interview' to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation." ECF No. 8-1 at 16. It argues that the "informal interview" process is not required "'when ICE notifies the alien that it is ready to execute an order of removal.'" *Id.* at 17 (quoting 8 C.F.R. § 241.4(g)(4), and citing *Rodriguez-Guardado v.*

*Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017)). But § 241.4(g)(4) operates in parallel with § 241.4(l). The government is correct that, under § 241.4(g)(4), a "custody review" need not be conducted if "it is *ready to execute* an order of removal." 8 C.F.R. § 241.4(g)(4) (emphasis added). The "informal interview" required by § 241.4(l) is different. That procedure ensures that when a noncitizen's release has been revoked, the noncitizen has notice and an opportunity to be heard regarding the basis for the revocation of release. And here, the record here does not come close to establishing that the government is "ready to execute" an order to remove Mr. Douglas.

In short, nothing the government has pointed to excuses ICE from conducting an informal interview whenever it revokes conditions of supervised release. 8 C.F.R. § 241.4(l). The government must conduct the informal interview required by 8 C.F.R. § 241.13(i)(3) within fourteen days of this Order.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.    No later than **October 3, 2025**, the government shall conduct the informal interview required by 8 C.F.R. § 241.13(i)(3).

2.    By **October 10, 2025**, the government shall produce to Petitioner any information or documents related to any efforts taken to effectuate Petitioner's removal (including what steps had been taken prior to the July 9 Notice of Revocation of Release), including specifying the date (and, if applicable, time) of such steps, and any other information that may bear on whether there is a significant likelihood of Petitioner's removal to the U.K. (or any other country) in the reasonably foreseeable future.

3.     By **October 17, 2025**, Petitioner shall produce to the government any additional information or documents that he contends bears on whether there is a significant likelihood of Petitioner's removal to the U.K. in the reasonably foreseeable future.

4.     On **Monday, October 20, 2025, at 11:00 a.m.,** the Court will hold an evidentiary hearing in the **U.S. District Courthouse in Baltimore, Maryland (101 W. Lombard St.)** on whether there is a significant likelihood of Petitioner's removal to the U.K. in the reasonably foreseeable future.

Date:  September 19, 2025                              _____/s/_____
                                                                            Adam B. Abelson
                                                                            United States District Judge