## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

VINCENT DOUGLAS,

    *Petitioner*,

    v.

NIKITA BAKER, *et al.*,

    *Respondent*.

Case No. 25-cv-2243-ABA

## MEMORANDUM OPINION AND ORDER

Vincent Douglas has filed a petition for a writ of habeas corpus seeking release from immigration detention. He argues that continued detention violates his due process rights because there is no significant likelihood that he will be removed in the reasonably foreseeable future. The Court previously denied this claim, but retained jurisdiction over the matter, based in part on the government's representations regarding Mr. Douglas's potential removal to the United Kingdom. But the record now, following briefing and an evidentiary hearing and the Court having given the government months to show whether steps were being taken to effectuate Mr. Douglas's removal to the U.K., establishes that at present there is no significant likelihood that he will be removed in the reasonably foreseeable future. Accordingly, the Court will grant his petition.

## BACKGROUND

The Court assumes the parties' familiarity with the Court's prior memorandum opinion in this case, which laid out the relevant factual history. *Douglas v. Baker*, Case No. 25-cv-2243-ABA, 2025 WL 2687354, at *1–2 (D. Md. Sept. 19, 2025) (ECF No. 12 at 1–4). In brief, Mr. Douglas is a Jamaican citizen who has resided in the United States for

over thirty years. ECF No. 1 ¶ 1. Approximately nine years ago, based on his substantial cooperation with U.S. law enforcement in connection with a criminal investigation and a finding by an Immigration Judge that he was likely to be tortured if he returned to Jamaica, he was granted withholding of removal with respect to Jamaica and placed on supervised release. *Id.*; ECF No. 9 at 2. In July 2025, Mr. Douglas was detained by Immigration and Customs Enforcement ("ICE") at a routine check-in. The government represented that it intended to remove Mr. Douglas to the United Kingdom, and that his "case [wa]s under current review by United Kingdom for the issuance of a travel document." ECF No. 8-2 at 1. Mr. Douglas brought the instant habeas petition shortly thereafter, arguing that under *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), he was being indefinitely detained in violation of the U.S. Constitution because there was no significant likelihood that he would be removed to the U.K. (or any other country) in the foreseeable future.

In its prior opinion and order of September 19, 2025, this Court held, among other things, that it had jurisdiction over Mr. Douglas's claims, but that Mr. Douglas had not yet carried his burden to show a *Zadvydas* violation. *Douglas*, 2025 WL 2687354, at *1. The Court reached the latter conclusion because it "accepted" the government's representation that "there is a diplomatic effort underway to effectuate Mr. Douglas's removal to a country other than Jamaica, and specifically to the U.K." *Id.* at *4. However, the Court noted that "[t]he *Zadvydas* analysis is inherently dynamic" and that the Court's obligation was to continue to monitor the foreseeability of Mr. Douglas's removal. *Id.* To that end, the Court ordered the government to produce to Mr. Douglas by October 10, 2025:

> Any information or documents related to any efforts taken to effectuate Petitioner's removal (including what steps had been taken prior to the July 9 Notice of Revocation of Release), including specifying the date (and, if applicable, time) of such steps, and any other information that may bear on whether there is a significant likelihood of Petitioner's removal to the U.K. (or any other country) in the reasonably foreseeable future.

*Id.* at *6. The Court also scheduled an evidentiary hearing for October 20, 2025.

The government produced no evidence in response to the Court's September 19 order. ECF No. 14 ¶ 3. Prior to the October 20 hearing, the petitioner filed a notice including, among other things, a news article reporting that at least as of June 2025, the U.K. was not among the countries that had agreed to accept third-country deportees from the United States. ECF No. 14-1. The government did not file any update or evidence prior to the evidentiary hearing, and offered no evidence, testimonial or otherwise, at the hearing. The government conceded that it was not aware of any other documents bearing on the question of Mr. Douglas's removal. Accordingly, the only evidence in the record reflects that the U.K. is not among the countries that have agreed to accept third-country removals from the U.S. And there is no evidence that the U.S. has lodged any request with any other country to accept Mr. Douglas or taken any other steps toward effectuating Mr. Douglas's removal.

## DISCUSSION

The Court has recently outlined the legal standards under *Zadvydas* and 8 U.S.C. § 1231 at length both in its prior opinion in this case, *Douglas*, 2025 WL 2687354, and in *Cruz Medina v. Noem*, -- F. Supp. 3d. ---, Case No. 25-cv-1768-ABA, 2025 WL

2306274, at *3–11 (D. Md. Aug. 11, 2025) ("*Cruz Medina I*").[1] The Court will briefly summarize this reasoning at the outset, which is fully incorporated herein by reference.

When a noncitizen is detained pursuant to 8 U.S.C. § 1231(a)(6) based on an intent to remove the person to another country, that detention is authorized only if there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. This is because, among other concerns, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. The Supreme Court held in *Zadvydas* that six months was a presumptively reasonable period for detention related to removal. *Id.* at 701. There is ambiguity regarding whether the six-month period of presumptive reasonableness runs from the date an order of removal becomes administratively final (regardless of whether the person was detained during that six-month period) or counts all days in detention whether continuous or discontinuous. *Cruz Medina I*, 2025 WL 2306274, at *7–8. But "regardless of whether the six-month *Zadvydas* period has expired, the question presented" by a petition asserting a *Zadvydas* claim is "whether [the petitioner's] removal is reasonably foreseeable." *Id.* at *9. Both during the six-month period and after, a district court has an ongoing "obligation to determine whether detention remains authorized." *Id.* at *3.

The purpose of detention under § 1231(a)(6) is to "effectuat[e] an alien's removal." *Zadvydas*, 533 U.S. at 697. And the Supreme Court held in *Zadvydas* that in the context, particularly given the background requirement of due process and the need

---

[1] A subsequent decision in *Cruz Medina* is not pertinent to the issues currently presented in this case. *Cruz-Medina v. Noem*, -- F. Supp. 3d. ---, Case No. 25-cv-1768-ABA, 2025 WL 2841488 (D. Md. Oct. 7, 2025). But to avoid confusion, the Court will refer to its August 11 opinion in *Cruz Medina* as *Cruz Medina I*.

to avoid indefinite detention, "*[c]essante ratione legis cessat ipse lex*"—where "the rationale of a legal rule [is] no longer applicable, that rule itself no longer applies." *Id.* at 699 (quoting 1 E. Coke, Institutes *70b). The fact that the fundamental purpose of detention under § 1231(a)(6) is to effectuate removal informs the overall legal framework for habeas petitions in this context, as this Court has previously explained and does not rehash here. *Cruz Medina I*, 2025 WL 2306274, at *3–5; *Douglas*, 2025 WL 2687354 at *3–4. But one question presented here is how to consider the passage of time under the inherently dynamic *Zadvydas* standard.

The Supreme Court has answered that question too, twice. It has instructed that the passage of time while a noncitizen is detained, particularly delay in the absence of any steps being taken to effectuate or even advance the process of removal, itself is important evidence relevant to whether continued detention is statutorily authorized. In *Zadvydas*, the Supreme Court explained that a "habeas court," in "ask[ing] whether the detention in question exceeds a period reasonably necessary to secure removal . . . should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. The Supreme Court reiterated that point in *Clark v. Martinez*, 543 U.S. 371 (2005), holding that because the government there had "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)," and because the other evidence confirmed that "removal to Cuba [was] not reasonably

foreseeable," "the petitions for habeas corpus [there] should have been granted." *Id.* at 386–87.

As noted above, earlier in the course of the immigration detention of Mr. Douglas the Court concluded that based on the record at that time, the amount of time in detention, and the importance of deference to the Executive in the immigration context, there was an adequately significant likelihood at that time that Mr. Douglas would be removed in the reasonably foreseeable future to justify continued detention. *Douglas*, 2025 WL 2687354 at *3–4. But that is no longer the case. For the following reasons, the Court concludes that the present record establishes that there is not a significant likelihood that Mr. Douglas will be removed to the U.K. (or any other country) in the reasonably foreseeable future. As the Court explains below, the record is in most relevant respects the same record on which the Court previously denied Mr. Douglas's petition. But in part because of the passage of time and the absence of any evidence in the record that the government has used that time to advance efforts to remove Mr. Douglas, the Court concludes that the government is no longer authorized under § 1231(a)(6) and *Zadvydas* to detain Mr. Douglas.

There are "good reasons to believe that the Supreme Court understood the presumption it was adopting to apply only during the first six months after an order of removal becomes administratively final." *Cruz-Medina I*, 2025 WL 2306274, at *8. But even assuming otherwise—*i.e.*, insofar as Mr. Douglas is still within the six-month period of presumptive reasonableness because he has not been detained in *total* for more than six months—Mr. Douglas has shown that, at this time, there is no significant likelihood that he will be removed from the U.S. in the reasonably foreseeable future.

First, the record reflects that the U.K. has not agreed to accept non-U.K. citizens removed from the United States. That fact is reflected in an article from June 2025 that Petitioner has submitted. ECF No. 14-1. And although the government is obviously in the superior position to inform the Court about the status of any agreement for third-country removals to the U.K., the government has offered no evidence to the contrary or otherwise disputed the point. *See Zavvar v. Scott,* No. 25-cv-2104-TDC, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) (granting a petition on a *Zadvydas* claim in part because the petitioner had submitted "media accounts, unchallenged by Respondents," reflecting that no third country had agreed to accept him). Accordingly, the undisputed evidence in the record at minimum suggests that it is highly unlikely that Mr. Douglas will be removed to the U.K.

Second, Mr. Douglas has not yet been removed despite the government having held him in detention for over three-and-a-half months, in addition to having had over nine years since his removal order became final to attempt to effectuate his 2016 order of removal. ECF No. 1 ¶ 1; *see Zavvar*, 2025 WL 2592543, at *7 (finding that the fact that petitioner had not been removed in the 17 years since his removal order was evidence against the likelihood of removal now); *Villanueva v. Tate*, Case No. 25-cv-3364, 2025 WL 2774610, at *10 (S.D. Tex. Sept. 26, 2025) (finding it relevant to the *Zadvydas* analysis that "during the 8-year period since [Petitioner] was ordered removed, the government's efforts to remove him—sparse and sporadic as they may have been—have been unsuccessful").

Finally, and perhaps most tellingly, the government produced no evidence in response to the Court's September 19, 2025 order directing it to produce by October 10 all "information or documents related to any efforts taken to effectuate Petitioner's

removal." *Douglas*, 2025 WL 2687354, at \*6. The only reasonable inference to draw from that failure to produce evidence is that no such evidence exists—in other words, that other than potentially lodging a request to the U.K. back in July, three and a half months ago, the government has taken no action to effectuate or even advance the possibility of Mr. Douglas's removal. *See* Fed. R. Civ. P. 37(b)(2)(A)(i) (providing that if a party does not produce information in response to a discovery order, the Court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"); *see also, e.g.*, *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) (finding in a trademark case that "the absence of any evidence of actual confusion . . . creates a strong inference that there is no likelihood of confusion").

In addition to the straightforward evidentiary inference that flows from the absence of evidence produced in response to the September 19 order—demonstrating that there are no active efforts to remove Mr. Douglas—the government also affirmatively corroborated this conclusion during the hearing. The government stated that it had requested all documents from ICE concerning Mr. Douglas's removal, but that ICE had provided "nothing." The government conceded that the only evidence that "bear[s] on the question of how likely it is that Mr. Douglas is going to be removed to the U.K." are ECF No. 8-2 and ECF No. 8-3, the initial letter and notice of removal issued to Mr. Douglas upon his detention. Other courts have relied in part on similar admissions as confirming the lack of a significant likelihood of reasonably foreseeable removal. *See, e.g.*, *Zavvar*, 2025 WL 2592543, at \*7 (D. Md. Sept. 8, 2025) ("At the hearing, Respondents could not point the Court to any evidence that [Petitioner's] removal to one of those countries is reasonably foreseeable."); *Munoz-Saucedo v. Pittman*, Case

No. 25-cv-2258-CPO, 2025 WL 1750346, at *8 (D.N.J. June 24, 2025) (granting a *Zadvydas*-based petition after an ICE official could not "provide any information" at a hearing about additional requests to countries for third-party removals). In short, the present record establishes that there is not a significant likelihood that Mr. Douglas will be removed in the reasonably foreseeable future.

The two documents the government initially generated in July 2025, ECF No. 8-2 and ECF No. 8-3, do not change this conclusion. Those documents, the notice of revocation of release and notice of removal, stated that Mr. Douglas's case was "under current review by United Kingdom for the issuance of a travel document" as of July 9. ECF No. 8-2 at 1. This Court credited that statement for purposes of its earlier opinion in September. *Douglas*, 2025 WL 2687354, at *4. But over three months have passed since the government made those representations. In the interim, it has not removed Mr. Douglas to the U.K., has not produced any related documents in response to a court order, and has stated affirmatively that there are no documents related to removal to the U.K.

Courts do, and should, grant substantial deference to "Executive and Legislative Branch decisionmaking" in the immigration context. *Zadvydas*, 533 U.S. at 695. And Congress has authorized detention after a final order of removal, at least where removal is reasonably foreseeable. *Id.* at 699; 8 U.S.C. § 1231(a)(6). Deference to the executive branch and Congress's intent as reflected in § 1231 are factors that courts must consider in deciding whether a *Zadvydas* petitioner has proven an entitlement to relief pursuant to 28 U.S.C. § 2241. But the Supreme Court distilled that deference, along with the requirement that immigration detention comply with due process, in *Zadvydas*, and directed that individuals remain in immigration detention only if there is a significant

likelihood that the government will be removing the person to another country in the reasonably foreseeable future. In other words, "courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention." *Zadvydas*, 533 U.S. at 700.

In previously denying Mr. Douglas's petition about a month ago, the Court deferred to the Executive's prerogative to reverse course on its previous determination to not seek Mr. Douglas's removal to a third country and to grant him supervised release, as well as the reality that effectuating removal, especially third-country removal, can take time. The Court remains deferential to that prerogative. But the deference baked into the *Zadvydas* standard does not permit the government to detain a noncitizen and then sit on its hands. Such inaction, or lack of progress in effectuating removal, is precisely what *Zadvydas* forbids. Despite having held Mr. Douglas in detention for over three and a half months since his supervised release was revoked on July 9, 2025, the government has come forward with no evidence that it has taken any efforts during that time to effectuate or even advance his removal to the U.K. or any other country. Accordingly, the current record as a whole establishes that there is no significant likelihood that Mr. Douglas will be removed from the United States in the reasonably foreseeable future. Mr. Douglas is entitled under *Zadvydas* to issuance of a writ of habeas corpus.[2]

---

[2] In reaching this conclusion, the Court notes that the government has not argued that Mr. Douglas poses any risk of danger to the community. It is unclear whether courts may consider dangerousness where, as here, removal is not reasonably foreseeable. *Cf. Zadvydas*, 533 U.S. at 700 ("[I]f removal *is* reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.") (emphasis added);

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.      The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

2.      Respondents are directed to transport Mr. Douglas from the Camp East Montana Detention Facility, 6920 Digital Road, El Paso, TX 79936 to Baltimore, and to release him from the Baltimore ICE facility no later than **October 31, 2025 at 12:00 p.m. ET**.

3.      Mr. Douglas will be released subject to the same conditions of supervised release that applied prior to his detention.[3]


Date:  October 24, 2025                          _____/s/_____
                                                 Adam B. Abelson
                                                 United States District Judge

---

*Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004) ("We do not believe that *Zadvydas* can properly be read to prohibit the indefinite detention of dangerous resident aliens like Ma, while allowing the indefinite detention of dangerous resident aliens like Thai. An alien's ill mental health coupled with dangerousness cannot justify indefinite detention under *Zadvydas* when dangerousness alone cannot justify such detention."). But because the government has not argued dangerousness let alone proffered any evidence to such end, the Court need not decide whether, if there were such evidence, the *Zadvydas* analysis would be any different.

[3] *See Zadvydas*, 533 U.S. at 700 (explaining that following the grant of a habeas petition "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances").